Good morning, Your Honors, and may it please the Court. My name is Rochelle Wilcox, and I represent the appellant Sixto Salcido. Wilcox. The issue before this Court is whether Mr. Salcido has raised a question of fact on a material issue as to each of his claims against the defendants. It's a very low burden, and we believe that Mr. Salcido has easily met that burden here. He has raised a question of fact as to each of his claims against the four defendants. As to Dr. Zarek, there is evidence in the record that Mr. Salcido requested medication after his surgery, and he requested medication a week later, but Dr. Zarek did not order it. The trial court erred on this issue and concluded that Dr. Zarek did order medication and that it was not his fault that the medication was not provided to Mr. Salcido. But, in fact, the evidence in the record is to the contrary. It reflects that medication was requested and not ordered. That's a question of fact that should be resolved by a jury. In addition to that, would that, assuming that your view of the facts prevails, would that constitute constitutional deprivation under the Eighth Amendment? Yes, Your Honor, it would. He was deprived of pain medication, and he was in severe pain, and it lasted for a period of seven months. There are numerous cases. The term is deliberate indifference. Deliberate indifference is the knowledge of a serious risk of pain or the knowledge that an inmate is in pain and the refusal to provide treatment, to prescribe treatment to alleviate that pain. That is encompassed by deliberate indifference. If Dr. Zarek was told that Mr. Salcido is in severe pain and Mr. Salcido specifically requested medication and Dr. Zarek failed to prescribe that medication for reasons that are not clear in the record, then Dr. Zarek may have been deliberately indifferent to Mr. Salcido's serious needs. And the issue is what inferences can be drawn. On summary judgment, inferences cannot be drawn favoring Dr. Zarek. The inferences that need to be drawn are inferences favoring Mr. Salcido. And so the district court was not entitled to infer that it was due to negligence or oversight or anything of that nature that medication was not prescribed. The inference that Mr. Salcido was entitled to was that Dr. Zarek intentionally ignored his pain and his request for medication in not prescribing that medication. The same thing is true as to Dr. Zarek's refusal to perform additional surgery to remove the bullet fragments that the record reflects still remain not around Mr. Salcido's T-spine, but in his left lower neck. The trial court ---- Can we really make that kind of conclusion? I'm sorry, Your Honor? Can we as a court really make that kind of conclusion? Isn't that a really medical decision? The doctor decided that he couldn't remove it, and now you're telling us we can look at the X-rays and he could remove it. Actually, the evidence on that issue is not that clear. What Dr. Zarek concluded after reviewing the X-rays is that there are bullet fragments remaining in his left lower neck. His declaration submitted in support of his summary judgment motion said that some of those bullet fragments are around the C-spine and cannot be removed. Some of them. Based on that declaration, defendants argued that the bullet fragments cannot be removed. But the evidence before the court, an X-ray and Dr. Zarek's declaration and Mr. Salcido's declaration is that there are bullet fragments in his left lower neck that could be removed. Well, but we don't know whether those are the ones that are giving him the pain. Salcido says, well, there's one that's against my tendon. Correct, Your Honor. And that's what's causing the pain. That's a medical judgment apparently that Dr. Zarek didn't agree with. That is a question of fact that cannot be resolved on summary judgment. Dr. Zarek, the evidence before the record is that Dr. Zarek, the evidence in the record, excuse me, is that Dr. Zarek expressed surprise on learning that all of the bullet fragments had not been removed and requested an examination of the C-spine, requested a neurosurgical examination. There is an examination by Dr. Millizar, excuse me if I've mispronounced his name, saying that there are no neurosurgical issues. The C-spine is okay and is not causing his pain. What defendants did is focused on an issue that could not be, was not operable. The bullets around his C-spine could not have been removed. That would be too dangerous. Dr. Zarek did not examine after learning that bullets remained in his left lower neck and after learning that Mr. Salcido had been told that one of those bullet fragments was hitting a tendon and causing his pain, there was no further analysis of the left lower neck and whether or not those bullets could or should be removed. Instead, the question focused on the C-spine. That is a question of fact. The court cannot resolve these questions of fact, these differences in medical judgment, on summary judgment. The trial court, the fact finder, the jury, could conclude that the doctors were correct and that their judgment was that the bullets should not have been removed, and that was an appropriate medical decision at the time. But on the other hand ---- Kagan. No, you're saying now that an inappropriate medical decision is the same as deliberate indifference to medical needs. I'm not sure that that's correct. In Jackson v. McIntosh, Your Honor, this Court concluded that those really are questions for the trier of fact, that where it is unclear what the result of that medical decision resulted from, whether or not it was deliberate indifference or just a medical judgment, is not a proper question on summary judgment. It's a question for the fact finder at trial. On summary judgment, the question is whether or not any evidence supports plaintiff's claim that the doctor was deliberately indifferent in reaching that judgment. And here, I think the answer is clear, that Salcido has presented at least enough evidence to go to a jury by showing that bullet fragments do remain in his left lower neck, by showing that Dr. Zarek was surprised when he saw those bullet fragments and by showing that instead of sending for further evaluation on those bullet fragments that Mr. Salcido had been told were hitting a tendon and causing his pain, the focus instead was diverted to the C-spine. But would you please get to the other doctors? I'm afraid you're going to run out of time, and I want to hear about the other doctors. Thank you, Your Honor. The other doctors, the issue basically is the fact that Mr. Salcido really did not receive adequate treatment for his pain. The record reflects that he has not, until July 2004, he did not receive medications reliably. The defendants had the audition. I want to interrupt you. I want to talk about Dr. Lee, because Dr. Lee, it seems to me you are attributing liability to him because he was a supervisor. He supervised everyone in the medical clinic, and that's the person that I had some real difficulty in trying to determine what the basis of your argument is against, especially Dr. Lee. Thank you, Your Honor. And wasn't he just a supervisor? What personal involvement did he have in the treatment of your client? He was responsible for supervising the appeal through its different levels and for making sure that the recommendations were fulfilled. He, first in December of 2003, he signed the chrono authorizing the cervical collar that Mr. Salcido didn't get for a year after that. At each level of Mr. Salcido's appeal, it was the responsibility of Dr. Lee and Dr. Bowman to make sure that he was getting the treatment that was required. And in the director's level appeal, in July of 2004, the director said, get him this treatment ASAP, get him a collar ASAP. He did not. He and Dr. Bowman were required to take steps to do it immediately. It wasn't until November of 2004, four months later that the chronos were issued, and it was another two months before he received the pillows. But there's no evidence that Dr. Lee knew that your client wasn't getting the treatment that had been authorized. I mean, you're holding him to a respondeat superior liability, aren't you? No. In part we are, but more directly. But you can't do that. I mean, in part, there is case law to support that if the system fails and it is the supervisor's fault that the system has failed, then the supervisor can be held responsible. But more specifically, his job in connection with the appeals, the administrative appeals, was to make sure this treatment was undertaken. He signed off on the appeals. The director told him, Supervisor Lee, you shall make sure that this gets done immediately. Specifically as to the cervical collar, that's a real issue. He was told specifically to make sure it gets done immediately, and he did not. It was another four months before a chrono was even issued and two months before he received that. What's the strongest evidence which you could proffer that Dr. Lee deliberately ignored those instructions? A letter to the PLO office reflects that Dr. Lee told the PLO office in September of 2004 that Mr. Saucedo had already received all of his prescribed treatment, and that was not true. Mr. Saucedo had not the chronos had not even been issued, and the treatment didn't come. The collar and the pillow did not come until January of 2005. Your red light is on, counsel. Thank you. Your time has expired. We'll hear now from the government. Thank you, Your Honor. My name is Kay Yu, and I represent the four defendants in this case. For deliberate indifference to attach to the two-prong analysis, one is that it was a serious need, and the second is the response of the individual to that need. And in this case, Dr. Zaret's response was as a doctor, he was concerned about the second surgery. He was reluctant to perform it because he felt that it would harm plaintiffs rather than help him. To that end, he asked for a neurological consultation for Dr. Mazart, and Dr. Mazart concluded that the second surgery should not occur. Whether that is true medically or not, subjectively, Dr. Zaret did not believe that a second surgery would be to the benefit of plaintiff who would actually hurt him. And that is why the court was proper in granting subrejudgment. The requisite subjective requirement of deliberate indifference was not there. What about pain medicine from Dr. Zaret? Dr. Zaret does not recall that specific incident, but he had said that if a patient asked him for medication, he would, of course, prescribe the medication. And what is interesting in the record is that plaintiff complained about pain to Dr. Mazart, and Dr. Mazart went back to the clinic until November, nearly six to seven months later, asking for pain medication, at which time he was immediately given pain medication. In any event ñ Well, of course, we're here in a summary judgment posture, and you've heard counsel indicate there's controverted testimony here, or at least controverted proffered evidence. What's your response? Well, I can only rely on the medical file, Your Honor, and the medical file does not reflect that. The medical file reflects that there was no prescribing medication until November, and upon the time that he asked for the medication, he got it. With reference to the collarbone, I mean, the cervical collar and the pillow, delays in administering pain medication and replacement of things such as crutches, pain, pillows, they do not rise to the level of deliberate indifference. They may be negligence, but they don't rise, and that's from Frost v. Agnos, 152, Fed 3, 1124, Ninth Circuit, 1998, which says those kinds of accruements, the failure to provide them, it does not rise to the level of deliberate indifference. That case is in your brief? I believe it's in the, yes, I think it's in the latter part. But he didn't get the collar until January 2005, and I think the pillow until late  The reason for that, Your Honor, it wasn't in stock. It wasn't in stock. They couldn't give it to him because they didn't have it. They ordered the wrong size. They ordered the wrong size. They gave him the collar. It didn't fit. And they ordered the pillow, and it wasn't there. So, I mean, you know. Yeah, there was all kinds of administrative problems in the procurement, which was not controlled by any of the defendants. Dr. Lee? Does Dr. Lee control that whole medical organization there at the prison? Does he have any responsibility for that? He has overall responsibility, but the procurement of certain items is a budgetary issue, Your Honor, which he does not have control. You mean they didn't procure because they didn't have the money? Well, I don't know exactly what happened, but they procured it, but they procured the wrong size. You must understand, Your Honor, 35,000 inmates in the facility, and there's a lot of medical attention going on. And granted, it may not be the best administered, but they did the best they could. There was no deliberate intent to not give it to the plaintiff. But didn't Dr. Lee sign off on some documents saying that he had received everything and that wasn't true? And Dr. Lee was really in charge of making sure that this individual received the treatment he was entitled to. Well, in reference to the second surgery, when plaintiff filed administrative grievance, he did direct Dr. Zarek to review him again for the second surgery. I mean, I don't know what more he could do, because he's not an orthopedic surgeon. And so with reference to the items such as the crutches, I mean, the cervical pillow and the cervix, he sent an order down to procurement to have it procured. Whether that was properly done or not, you know, he might have been negligent in that, but I don't think he was deliberately indifferent. Do you have any other questions? Anything further, counsel? No questions. Thank you, Your Honor. The case just argued will be submitted for decision, and we will hear argument in Stateline Hotel v. Jorgensen. Are both counsel here?
judges: Hall, O'scannlain, Gonzalez